UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SHAWN S. HEIDER

    Plaintiff,

-vs-                                                           Case No: 16-cv-1209

FINCANTIEIR MARINE GROUP, LLC

    Defendant.

**COMPLAINT & JURY DEMAND**

This is a civil action alleging deprivation of plaintiff Shawn S. Heider's rights under the Americans with Disabilities Act, 42 U.S.C. § 12203, *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADAAA"). Specifically, Heider alleges that defendant Fincantieri Marine Group, LLC. ("Fincantieri") discriminated against him in the terms and conditions of his employment based on his disability, retaliated against him for opposing disability discrimination, and terminated his employment because of his disability. Heider suffers from Post-Traumatic Stress Disorder ("PTSD").

**I. PARTIES**

1. Plaintiff Shawn S. Heider is an adult resident of the State of Wisconsin currently residing at N6078 State Highway 180, Marinette, WI 54143.

2. Defendant Fincantieri is a corporation doing business in Wisconsin whose primary business address is 1600 Ely Street, Marinette, WI 54143-2434. Defendant is an employer within the meaning of the ADAAA.

## II. JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over plaintiff's federal claim under 28 U.S.C. § 1331. Venue is appropriate in this district under 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this district.

## III. FACTUAL ALLEGATIONS

4. Plaintiff was first employed by Fincantieri through the staffing agency, PDS, who assigned Plaintiff to the Fincantieri shipyard where he worked as, among other things, a pipefitter between the months of September 2013 and October 2014.

5. Because of Plaintiff's full-time work for Defendant, he received benefits that included health insurance through PDS. In other words, a termination from Defendant's employ would result in a termination of his health insurance benefits.

6. In January 2014, Plaintiff was diagnosed with PTSD, a disability that interfered with several of Plaintiff's life activities, in particular his work, making achievement in those activities unusually difficult with onset of his PTSD. The onset of his PTSD was vulnerable to various "triggers," which included verbal

2

Case 1:16-cv-01209-WCG   Filed 09/08/16   Page 2 of 10   Document 1

harassment, confrontation, unwelcome and unexpected physical contact, heightened scrutiny and ridicule.

7. After his diagnosis in January 2014 and thereafter throughout his employment with the Defendant, Plaintiff provided his physician's diagnosis to Defendant and otherwise informed his supervisors and Defendant's Human Resources Department of the diagnosis and the "triggers" that caused his PTSD.

**8**. On or about May 15, 2014, Defendant transferred Plaintiff to a crew supervised by Randy Vann.  Plaintiff informed Vann of his PTSD and its triggers and explained that only wanted to come to work and do his job.  He requested that the aforementioned triggers be avoided and that criticisms of his work be given to him in a constructive, direct manner and not through ridicule or aggressive verbal confrontations.

9. On or about the same day, Vann's supervisor, Pipe Shop Superintendent Alan Fore called Plaintiff to his office and aggressively confronted Plaintiff, telling him that he had talked to Plaintiff's prior supervisor's and that Plaintiff had no credibility, that he was a "wanderer," and that he would be watching him.

10. Plaintiff had not been criticized in this manner by prior supervisors or any representative from the Defendant and was surprised to be confronted in this way in light of his requests for accommodation for his PTSD.  He informed Fore and Vann, who was also in attendance, that he suffered from PTSD and described its triggers.

11. The confrontation by Fore left him upset and confused and triggered his PTSD. The PTSD was further triggered when he noticed, upon starting to work after that meeting, that an employee was following him around the yard and watching him work. Plaintiff approached Vann in tears and told him that he was suffering from a PTSD episode, made worse by being watched by the employee. He stated that he had to leave and Vann allowed him to go home.

12. Thereafter, for the next several weeks, Plaintiff was regularly assigned work with employees who belittled and ridiculed him; he suffered from near daily harassment from fellow crew members under Vann's and Fore's supervision.

13. During that same period following his May 2014 meeting with Fore, Plaintiff frequently noticed Fore staring at him while working, often for extended periods of time without Fore saying a word. Fore also occasionally walked up behind Plaintiff while he worked and startled him with unwelcome and unexpected physical contact, which was a known trigger of Plaintiff's PTSD.

14. Fore is familiar with PTSD and its effects, as well as the triggers that can cause an onset of PTSD.

15. In approximately early June 2014, Plaintiff reported the harassment he had been receiving under Vann's crew and in particular by Fore to Jeff Anderson, who was then one of Defendant's Pipe Superintendents. He explained to Anderson that Fore's and his co-workers' harassment was triggering his PTSD and asked to be transferred to a different crew.

4

16. Approximately two days later, beginning on or about June 9, 2014, Plaintiff began working under the supervision of J.C. Hollinger, who had previously supervised Plaintiff and was well aware of Plaintiff's PTSD and its triggers.

17. Under Hollinger's supervision, Plaintiff was in a different shipyard and had no contact with Fore. During that period of the summer of 2014, Plaintiff was promoted to an inspection and repair position.

18. On approximately September 5, 2014, Fore was transferred and became the Pipe Superintendent overseeing Hollinger's crew.

19. After Fore's transfer, his previous behaviors towards Plaintiff and the behaviors from co-workers that Plaintiff had previously experienced when working under Fore, resumed. Plaintiff was regularly placed to work with co-workers who ridiculed and confronted him.

20. On or about September 26, 2014, Plaintiff had a confrontation with a co-worker, during which Plaintiff asked the co-worker to leave him alone multiple times. This was a co-worker, Nathan Niemuth, who Plaintiff had specifically requested to Hollinger that he not be placed with because Niemuth regularly harassed and ridiculed him.

21. After this confrontation, Plaintiff met with Supervisor Ron Meyers, who questioned Plaintiff about the incident and his attendance. Plaintiff broke down in tears and described to Meyers that Fore and others had not only failed

to accommodate his PTSD but appeared to be intentionally triggering it with their behaviors towards him and the assignments he had been given.

22. Approximately one week later, Plaintiff's employment with Defendant was terminated and he was walked out of the shipyard by armed guards.

23. Plaintiff was told he was being terminated for attendance, for which he had received no prior warning; the majority of Plaintiff's alleged attendance "incidents" were caused by his PTSD, a fact known by the Defendant.

24. On December 1, 2014, Plaintiff was re-employed by the Defendant through the staffing agency, Strom Employment Agency, ("Strom"), who, with Defendant's approval, assigned Plaintiff to the shipyard where he was to work as a pipefitter.

25. Because of Plaintiff's full-time work for Defendant, he received benefits that included health insurance through Strom. In other words, a termination from Defendant's employ would result in a termination of his health insurance benefits.

26. Plaintiff requested that he be hired to work first shift for a crew supervised by Ron Wilch, for whom Plaintiff had previously worked and Strom told him that Defendant agreed to accommodate that request.

27. On December 9, 2014, during Plaintiff's second orientation day, he was reassigned from Wilch's crew to Vann's crew, the same crew under which

6

Case 1:16-cv-01209-WCG   Filed 09/08/16   Page 6 of 10   Document 1

he had previously experienced harassment. On information and belief, it was Fore who made the decision to transfer Plaintiff to this crew.

28. Predictably, on Plaintiff's first day of full-time work with Vann's crew, he experienced the same harassment and ridicule that had caused him to seek Anderson's help in the summer of 2014.

29. That same day, at Plaintiff's request, a representative from Strom contacted Defendant and requested that Plaintiff be transferred to a different crew because of his PTSD and the fact that his interactions with co-workers on Vann's crew were triggering his PTSD.

30. Defendant told Strom it was not aware of any troubles Plaintiff had with Vann's crew and otherwise refused to transfer him.

31. On or about December 15, 2014, Plaintiff again approached Anderson and explained to him that Fore was going out of his way to trigger his PTSD, in retaliation for reporting him previously and in order to ensure Plaintiff's failure. Plaintiff explained that he was under intense anxiety and did not believe he could continue to work that day in light of the onslaught of his PTSD and Anderson approved his leaving for the day.

32. On the evening of December 15, 2014, Strom informed Plaintiff that Defendant was terminating his employment. Strom advised Plaintiff that Defendant stated he was being terminated because of an administrative error and that he should never have been hired back.

7

## IV. PROCEDURAL REQUIREMENTS

33. Plaintiff complied with all procedural requirements for this lawsuit under the ADAAA. He filed timely complaints with the Equal Employment Opportunities Commission and the Wisconsin Equal Rights Division alleging that the Defendant violated the ADAAA's prohibition against discrimination and retaliation. This action is being filed within 90 days of Plaintiff's receipt of the notice of right to sue issued by the EEOC on June 21, 2016.

## V. CAUSE OF ACTION – DISCRIMINATION & RETALIATION

34. For a first cause of action against defendant, Plaintiff re-alleges and incorporates all of the preceding paragraphs as though set forth fully herein.

35. By engaging in the conduct described above, including without limitation harassing the Plaintiff and otherwise failing to accommodate his PTSD by intentionally engaging in and permitting the behaviors that trigger his PTSD, and by terminating the Plaintiff on two occasions because of his PTSD, after the Plaintiff opposed this treatment, Defendant violated Plaintiff's rights and discriminated and retaliated against him in violation of the ADAAA.

36. As a direct result of Defendant's unlawful conduct Plaintiff has suffered and will continue to suffer damages including loss of employment opportunities, loss of income and benefits, emotional distress, psychological injuries and other pecuniary and non-pecuniary losses.

## VI.  CAUSE OF ACTION – PUNITIVE DAMAGES

37.  Defendant's conduct as described above was undertaken in wanton, willful and reckless disregard of the Plaintiff's rights under the ADAAA, thereby entitling Plaintiff to an award of punitive damages under these statutes.

## VII.  JURY DEMAND

WHEREFORE, Plaintiff demands a trial by jury on all of his claims and relief as follows:

A.  Income and benefits, both past and future;

B.  Reinstatement;

C.  Compensatory damages for emotional distress and psychological injury and loss of reputation;

D.  Punitive damages;

E.  A finding of unlawful discrimination;

F.  A finding of unlawful misrepresentation;

G.  An order directing Defendant to refrain from future discriminatory conduct;

H.  Reasonable attorney fees and costs; and

I.  Any other relief the Court may deem just and proper

Dated at Milwaukee, Wisconsin this 8th day of September 2016.

        Respectfully submitted:

        FOX & FOX, S.C.

        s/ Peter J. Fox
        Peter J. Fox
        735 W. Wisconsin Ave., 12th Floor
        Milwaukee, WI 53233
        T: 414-326-3260
        F: 414-224-1411
        E: pfox@foxquick.com
        State Bar No. 1037925